IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT
OF NEW YORK

Joshua Hope                                    )
49 Fulton Street, #17E                         )        **07 CV    4726**
New York, NY 10038                             )
                                               )
                                               )        **JUDGE KARAS**
        Plaintiff                              )
                                               )
           vs.                                 )        Civil Action
                                               )        No.
U.S. Department of Housing and Urban Development )
451 7th Street, SW, Rm. 5204                    )
Washington, DC 20410-2000                      )
                                               )
St. Margaret House                             )
49 Fulton Street                               )
New York, NY 10038                             )
                                               )
Joseph Breed                                   )
St. Margaret House                             )
49 Fulton Street                               )
New York, NY 10038                             )
        Defendants                             )

---

## COMPLAINT

Comes now Joshua Hope, the plaintiff, acting by and through counsel, respectfully file

this complaint against Defendants U.S. Housing and Urban Development, Defendant St.

Margaret House under the Trinity Church, and Defendant Joseph Breed, to this Honorable

Court. Plaintiff states and alleges as follows:

## **PARTIES**

The Plaintiff Joshua Hope, 87 now, is a citizen of the United States of Chinese origin,

and a resident of New York, domiciled at 49 Fulton Street, Apt. 17 E, New York, NY 10038.

Plaintiff was singled out by Mr. Joseph Breed, the Administrative Director of St. Margaret House management, for abusive punishment in deep-hatred retaliation against his outspoken expression of objection to the management's ill and brutal treatment against the plaintiff's fellow, similarly helpless senior citizens living in St. Margaret House, the building under Section 8 Federal Subsidy program.

Defendant Joseph Breed, is a citizen of the United States and a resident of the State of New York, who is believed to be domiciled at 49 Fulton Street, New York, NY 10038. Defendant Joseph Breed is believed to be the Executive Director for St. Margaret House, and responsible for its daily management. Defendant Joseph Breed is believed to having been playing key role in all scheme of on-going ruthless persecution targeting the Plaintiff simply because he feels uncomfortable to see a person publicly exercising his 1st Amendment rights living, breathing and walking under his eyelid.

Defendant St. Margaret House under the Trinity Church is a corporation incorporated in the State of New York with the business address for its place of principal business at 49 Fulton Street, New York, NY 10038. Defendant St. Margaret House is the landlord in relation to the Palintiff, the tenant. Defendant owns and possesses the Federally subsidized Building which is situated at 49 Fulton Street, New York, NY 10038. Defendant St. Margaret House hires and continues to hire such employee as Defendant Joseph Breed, negligently and recklessly gives Defendant Joseph Breed free hands to rule the place under the terror of persecution or of threats of persecution against those helpless senior citizens, allowing the scandalous epidemic of nursing home type persecution against the aged to infect without taking necessary quarantine measures;

Defendant Federal Housing and Urban Development (HUD) is a U.S. Federal Agency which is entrusted to administrate part of this nation's tax payer's funds, specifically allocated

2

by the Congress of the United states, to fund the eligible under-income aged and disabled citizens

by subsidizing their rent payment under Section 8 program in relation to this instant case. In this

instant case, Defendant HUD has recklessly violated its fiduciary duty by allowing and abetting

such wicked property owner as St. Margaret House to use the Federal funding as its weapon to

commit gross civil rights violations; It is also believed to have breached its fiduciary duties to

abuse the funds under Section 8, by giving the mis-identified land owner, who is not the ultimate

beneficiary of such vested property rights of our Federal rental subsidy, free hands to commit

gross civil rights abuses against the beneficiaries of such vested property rights under Section 8

program, by and through abusing the Federal funds under the program without taking any action

to halt the on-going abuses.

JURISDICTION AND VENUE

The subject matter jurisdiction is herein claimed as Federal Question jurisdiction pursuant

to 28 U.S.C. § 1331. **In this instant case, Defendants, through actions or omissions, jointly
or severally committed such serious civil rights violations and such civil torts against the
plaintiff as assaults, false arrests, false imprisonment, intentional/negnigent inflict of
emotional distress, persecutorial/retaliatory eviction, fraud and perjury, and negligence.**

**Defendant HUD is a Federal agency administrating the Federal housing subsidies
under Section 8 has abandoned its administrative role to allow co-defendants to abuse such
power deriving from such Federtal funds to persecute the Plaintiff, recipient of such
Federal rental subsidy, the intended beneficiary under the Federal financial subsidy
program tramping his lawfully protected civil rights by life threatening violence and fraud,
have triggered Federal question jurisdiction.**

**Federal question jurisdiction** is a term used in the United States law of civil procedure
to refer to the situation in which a United States federal court has subject matter jurisdiction to

3

hear a civil case because the plaintiff has alleged a violation of the Constitution, laws, or treaties of the United States.

Article III of the United States Constitution permits federal courts to hear such cases, so long as the United States Congress passes a statute to that effect. However, when Congress passed the Judiciary Act of 1885. The statute is now found at 28 U.S.C. § 1331: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

This Honorable District Court's jurisdiction under 28USC 1331 is also found in the underlying cause pursuant to U.S. Federal Civil Rights Act under 42USC 1983 claimed pursuant to Conspiracies to Interfere With Civil Rights (*See* [[USC:42:1985|42 U.S.C. § 1985]]); Conspiracy Against Rights of Citizens (*See* 18 U.S.C. § 241); Deprivation of Rights Under Color of Law, (*See* 18 U.S.C. § 242); The Jurisdictional Statue for Civil Rights Cases (*See* 28 U.S.C. § 1443);

The venue is proper in this judicial district under 28USC 1391(a) because the subject matter claimed arose herein the State of New York, and all defendants are residing within this Judicial District.

## NATURE OF THE CASE

1.  Obviously in frivolous nature, this case was originally brought by Defendant St. Margaret House against Plaintiff Joshua Hope, as a hold-over proceedings with the New York City Court, Housing Part, with the L&T Index number of 102744/06, seeking for eviction of this Plaintiff from the premise under Federal rental subsidy program under Section 8, pursuant to 24 CFR 247.6, Eviction for Good causes.

2.  This case should be removed into U.S. District Court due to the fact that New York Housing Court's summary proceedings of eviction under the wrongful label of hold over does not have subject matter jurisdiction into the extended areas of intentional torts, constitutional issues, issues arising from civil rights violations under 42USC1983, neither does the proceeding provide full fledge evidentiary hearings, nor trial by jury.

4

3. The on-going abuses against the Plaintiff has raised Federal Housing rights issues. Most importantly, they have triggered serious Federal civil rights issues. The U.S. District Court is the proper forum to hear the grievance in such a nature. The New York City Court of Housing Part does not appear to be a proper and competent forum concerning the subject matter jurisdiction. Defendants' commission, coupled with co-defendant HUD's omission, has triggered Federal actions Title 42, Section 1983 under by private actions. Such action is appropriate in light of Wright v. City of Roanoke Redevelopment Authority, 479 US 418.

4. In landlord tenant dispute concerning Federal rental subsidies and related "property rights" issue, the subject matter jurisdiction is appropriate in this jurisdiction according to most recent landmark case. "The Court found that the language of the statute ***created a federal right for the tenants***, and the intent of the statute, particularly in the absence of contrary language, create ***a private right of action for the tenants to enforce its provisions.*** Notably, the Court recognized that the entire intent of 42 U.S.C. §1427f(t) -- to permit eligible families in projects opting out of the Section 8 program to remain in their homes and receive enhanced rental subsidies -- would be defeated *if the tenants were denied access to the courts* and ***the landlord were permitted to bring eviction actions against them...***" Based on such a rationale, the U.S. District Court under the Honorable Judge John Gleeson, grants the tenants' motion for a preliminary injunction barring their landlord from refusing to renew their leases and ordering the landlord to accept the tenants' Section 8 enhanced vouchers. See Estevez v. Cosmopolitan Assocs. LLC, No. 05-CV-4318 (JG), 2005 WL 3164146, 2005 U.S. Dist. LEXIS 29844 (E.D.N.Y., Nov. 28, 2005, Gleeson, J.)

## INTRODUCTION

5. Plaintiff Joshua Hope, age of 87 now, is a U.S. citizen of an ethnic Chinese origin. Plaintiff is currently residing inside Trinity Church run St. Margaret House, at 49 Fulton Street, Apt. 17E, New York, NY 10038. Plaintiff, together with his spouse, now deceased, has been residing in that building, as the recipient and beneficiary of the

Federal rental subsidy under Section 8, since 1987, for approximate 2 decades. Plaintiff and his then spouse, were elected to be the model residents of the entire building for three consecutive years during the period from 1995 through 1998. Plaintiff has long been highly acclaimed by his neighbors for his excellent public image and his ethical and moral raw model role there. However, Plaintiff was singled out by Mr. Joseph Breed, the Administrative Director of St. Margaret House management, for abusive retaliation against his outspoken verbal criticism opposing the management's patterns of ill, and brutal treatment against the helpless senior citizens living in St. Margaret House, the building under Federal Subsidy program under Section 8. The Defendants' numerous tortuous actions accomplished via Mr. Joseph Breed, is seen a scheme of serious civil rights abuses designed and devised to curtail and suppress any vocal protests from the elderly and handicapped residents of the Building who are relying upon the Federal rental subsidies under Section 8.

6.  Defendant Joseph Breed, the Administrative Director of the St. Margaret House, for unknown causes, either for ideological or pragmatic reasons, has demonstrated his peculiar prejudice, hatred and hostility against these poor, under-income, aged and handicapped residents of the St. Margaret House. Shortly after Defendant Joseph Breed was appointed, he immediately ordered to remove both fans which had been originally installed in the passage of each floor nearby elevator and the fan inside elevator, and to shut the window to block the air circulation. Defendant's efforts in turning the public passage area into a hot pot turn out to be successful. Consequently, his order of removal of these cooling facilities for nobody-knows reason, has exposed all those aged residents in their 80s and 90s to the drastic changing temperature of up to 110 degrees in the passage while they are walking out of the AC-controlled apartments, waiting for usually slow-responded elevator. Defendant Joseph Breed's unknown, mischievous hobby to turn the air-circulated public passage into air tight "melting pot" did not stop there. Several months after removal of fans, he further ordered to permanently shut all originally adjustable glass windows by dead screw on every floor, having made things from bad to worse. Plaintiff repeatedly reminded the management under Defendant Joseph Breed that the air-proof public elevator waiting area under the "green room

effect" without AC is too hot. Plaintiff offered an alternative by reinstalling blinds to block the burning sunlight on his floor at his own cost. Plaintiff's offer was flatly rejected by Defendant Joseph Breed. In order to raise the attention to the management and neighbors, plaintiff placed a thermal meter outside his apartment, alerting all fellow residents of the high temperature by reading his thermal meter. Plaintiff's actions by offering to installing blinders and hanging the thermal meter outside his apartment was deemed as an open opposition designed to defeat Defendant Joseph Breed's unknown mischievous program.

7. In or about September 2000, Defendant Joseph Breed "creatively" found his better way to quickly increase the income by commercializing the the lobby areas of the building under Federal rental subsidy program, through inviting, introducing and attracting outside strangers from nearby streets into the building's dining halls and other lobby areas, for such commercial purposes as selling them food and drinks, leasing them spaces for wedding parties, turning large portion of private place specifically used for those elderly and disabled occupants into a lucrative open marketplace. In the meantime, Defendant Joseph Breed also rented large portion of the lobby areas to Vincent Hospital as its outlaying clinics. Defendant Joseph Breed's commercialization program has driven these helpless, virtually voiceless residents into an ever-condensed narrow areas.

8. Defendant Joseph Breed's ultra-smart pocket-deepening plan had caused public outcry. Vocal criticism appeared in public posting areas. In response to the growing wave of complaints, Defendant Joseph Breed decided to "curtail", if not completely "take back", the residents' "privilege of speech" through public posting boards. In or about later 2000, Defendant Joseph Breed, by and through St. Margaret House Management, issued an ordinance banning all residents' postings without being submitted for contents-prescreening, while none should be leaked for publicizing on the public posting areas unless and until granted by the management for permission of posting after the latter's content-review. Defendant Joseph Breed's such actions were encountered with vocal criticism from none but Plaintiff Joshua Hope.

9. On August 2, 2005, Defendant Breed called for a meeting by all residents. On that meeting, he made a public pronouncement that the management decided to drastically

7

increase the price of the mandatory meal, the lunch meal which Defendant St. Margaret House coerces all residents to buy as part of the tenants' duty. Defendant entered into a new contract in value-added price with a Chinese restaurant as supplier who has long been condemned by the residents for poor quality of food in comparison to the average of the locality. Eight residents were allowed to give opinions, all opposed the unilateral increase of price for that originally thankless coercive meal. While, Plaintiff Joshua Hope raised his hand all the time, waiting for his turn to speak, Defendant Joseph Breed declared the meeting was over.

10. The sharp increase of the mandatory meal price has since broken the peace and harmony of the building. Residents there aired their protests and petitions through different means. Plaintiff was also invited to join the residents organization meetings discussing counter-measures towards the management. Plaintiff's active involvement in the growing residents opposition has caused Defendants' alert. Defendants' patience and tolerance went thin when they found Plaintiff Joshua Hope took the media interview, petitioned to the Mayor's office, calling for intervention of the management's mal-treatment against his fellow residents as of seniors and disabled. A premeditated reprisal and retaliations, employing fraudulent and deceiving behavior, targeting Plaintiff Joshua Hope had been started by St. Margaret House under Joseph Breed.

11. To implementing the premeditated retaliation targeting Plaintiff Joshua Hope, Defendant Joseph Breed plotted and caused to happen, six such incidents as assaults, false arrests, false imprisonment, by wrongfully using New York Police forces through false-alarming "911 calls" to the NYPD during the short period from August 2006 through November 1, 2006. In all these vicious plots, Defendants St. Margaret House, under the manipulation of Defendant Joseph Breed, for the unlawful purpose of retaliation against the Plaintiff for his outspoken expression of objection to management, Plaintiff, then 86, was defamed and tarnished as an attempted murderer, violent attacker, violent vandals who vandalized public properties, and violent lunatic who needs to be immediately confined in compulsory asylum for psychiatric treatment. These plots was accelerated into its ecstasy on November when Defendants maliciously, and viciously caused dispatch of a

8

crew of six police officers from the 1st Precinct of the NYPD. Acting on Defendants'
false information by lie, these police officers falsely arrested the Plaintiff in front of all
on-looking neighbors, forcibly sent the Plaintiff into Bellvue Hospital, Psychiatric
Department for mandatory psychiatric evaluation. Where the Plaintiff, a mentally
healthy, and a law abiding senior citizen of 86 of age, was imprisoned in a confined area
for approximately 10 hours, being forcibly undergone all steps of psychiatric diagnosis to
ascertain whether he is a mentally troubled patient. The Plaintiff was finally released
from the coercive confinement when doctors there, after taking full diagnostic
procedures, declared that Plaintiff was mentally healthy and normal. (Please see Exhibit
1.) Defendants knew and should have known that Plaintiff Joshua Hope is an aged man
of 86, in fragile health while exposing him under such naked police violence and
brutality, also exposing him as a falsely labeled "mentally disordered trouble maker"
being overpowered by large police task force in front of neighbors will cause life
threatening emotional distress, mental anguish, endangering his fragile life.
Nevertheless, Defendants prompted the occurrence of such serious matters by crude lie
and fraud.

12. Defendants' such violent actions of hatreds maliciously borrowing the hands of law
enforcement by fraud and lie, have severely harms Plaintiff's dignity and health. Under
the growing pressure of such violently brought distressful events, plaintiff, the victim of
such lethal plots, plaintiff, aged 86 then, has collapsed in his health, his family Physician
Dr. Liu diagnosed that plaintiff is living under the life threatening condition. (See
Exhibit #2); Defendants knew or should have known that Plaintiff was then an 86 year
old in fragile health, still they have maliciously caused all these severe personal injuries
to occur.

13. Defendant Joseph Breed and Defendant St. Margaret House's commissions of these
intolerable violence and torts against the Plaintiff have grossly violated the civil rights
under Title 42, Section 1983 of USC. Such violations have been properly reported to the

New York Attorney General's Office, and also being Complained in writing to the
Office of U.S. Housing and Urban Development (HUD).

14.  The record shows that in implementing these retaliatory plots in order to forever silence
the Plaintiff, Defendant Joseph Breed employed unsophisticated lies and fraud to achieve
his lethal game targeting an 86 year old senior citizen. By having committed fraud to
achieve its dramatic and probably lethal outcome, Defendant Breed repeatedly lied to all,
including all law enforcement agencies. In the Police Report of October 28, 2006 event,
Defendant Joseph Breed, pretended to be a "victim", lied to the police that Plaintiff
Joshua Hope, 86, wanted to "shoot" Defendant Breed, having failed short in explaining
using what sort of weapon to "shoot"; In support of the Defendant's false charge about
the Plaintiff's "violent propensity", Defendant Joseph Breed further lied to the police
that Plaintiff, again, 86 then, "had smashed windows", while, again failing short to
pinpoint which window of the building had been "smashed". (Please see Exhibit 3)
Using such sort of fraudulent charges, defendant Joseph Breed deceived the police
department to help him achieve his vicious retaliation plot targeting the Plaintiff, having
caused assault, false arrest and false imprisonment. In plotting and causing severe civil
rights violation against the plaintiff, Defendant had committed fraud by lying to the law
enforcement agency, because Plaintiff has never had any possession of weapons, neither
has he been able to learn how to "shoot" or how to say "shoot" to anybody. Accusing
Plaintiff to have "smashed window" is also a sheer lie, there was not a single piece of
window having been found "smashed" during the period.

15.  Coupling with the above-referenced violent torts against Plaintiff, Defendant St.
Margaret House under Defendant Joseph Breed, started its frivolous actions and
proceedings to evict Plaintiff for alleged "other good causes". Having popped up
approximately twenty alleged incidents, again using the habitual pattern of fraud,
tarnishing Plaintiff to be a trouble maker, allegedly causing public nuisance, Defendants
unilaterally interrupted the automatic annual renewal of the lease, declared the
termination of Plaintiff's rental subsidies under Section 8 by HUD, declared that plaintiff
is a "hold-over" occupant. In disregard of the fact that more and more counter evidence
speaks loudly by itself that Defendant Joseph Breed, the principal architect of this whole

retaliation/persecution campaign, has committed serious fraud and perjury, defendants chose a sort of summary eviction against hold-over occupant proceedings by bringing the eviction action in the New York City Court, Housing part in December 2006.

16. Defendants, relying upon the huge wealth and resources accumulated by the Trinity Church for hundreds of years, Defendants repeatedly and flatly rejected Plaintiff's counsel's proposal for reconciliation and settlement, determined to rip off the Plaintiff's vested property rights in his 20-year long rental subsidies, and kicking the 87-year old into street. The furtherance of on-going persecution campaign in color of law placing Plaintiff under constant pressures and mental distress, having caused life threatening health hazards against Plaintiff.

17. None of these commissions and omissions are initiated with legitimate causes. Defendant Breed did not cover up the real cause underlying the alleged cause of actions: to suppress the Plaintiff's vocal expression as a proper exercise of his 1st amendment rights. Defendant admitted to the Police that the dispute between he and Respondent was caused by dispute over the "food price" ("At T/P/O, complainant (Joseph Breed— added) states that a dispute erupted over food prices at perpetrator's (Joshua Hope— added) residence...Both parties have had previous verbal disputes in the past." See Exhibit #1, *supra*). Defendants have been seeking to curtail the occupants' proper exercise of their 1st by using un-restrained repressive measures in color of law by using such illegal means as fraud, violence, torts, and abuse of civil proceedings.

18. The tortuous acts against the Plaintiff is also seen racially motivated. The Plaintiff is singled out for a targeted retaliation because he is a U.S. citizen of Chinese origin. This is just another proof of serious violation of the Plaintiff's civil rights. In pursuing this racially motivated, retaliatory type, heinous abuses against Plaintiff for his vocal expression criticizing the defendant's mandatory meal policy, Defendants caused police brutality against Respondent six (6) times during a brief period from August 2005 through November 2006. Such police brutality as an instrument to serve the petitioner's ulterior motive, maliciously exploited by the Defendants, had been accelerated into its climax in November 2006 when Mr. J. Breed lied to the Police of 1st Precinct that Respondent was mentally troubled. As the result of such misinformation, a task force

squad of police rushed to the scene, for the 6th time, falsely arrested Plaintiff and falsely imprisoned him for a whole day on November 1, 2006, ordering for the latter's coercive psychiatric evaluation. The mandatory psychiatric evaluation turned out that Respondent is mentally normal;

19. Defendant Joseph Breed's pattern of fraud has caught the eyes of the Psychiatrists in Bellvue Hospital. In the discharge sheet prepared by Bellvue Hospital as routine business records, the attending psychiatrist who did not know either Plaintiff or Defendants, inattentively, yet objectively recorded one incident of "Breed pattern" of lying: "police states 'patient was swinging his cane at residents". However, the record continues in another place: "According to his home attendant, patient has never swung his cane at the super (manager)." (See Exhibit #3, supra).

20. All cause of actions in this instant case falls under Federal Question Jurisdiction under 28 USC 1331. Plaintiff in this case do have claims under the Fair Housing Act of 1968, as amended, 42 USC 3601 *et seq,* and the Civil Rights Act under 42 USC Section 1981, 1982, 1983. Plaintiff may also have state claim under New York Executive Law, while the State of New York has a quasi-sovereign interests in protecting residents from irreparable harm threatening the life, safety and dignity of the elderly under Section 8 programs, preventing the harmful effects of basic human rights violations, discrimination in retaliatory manner in housing discrimination, and preventing substantial social and economic harm created thereby.

21. The underlying cause of action of this instant case is that Defendant St. Margaret House and Joseph Breed, with the negligent reckless assistance from Co-Defendants HUD, have committed severe civil rights abuses against the Plaintiff, an elderly of 87 now, a recipient of Federal Section 8, rental subsidy for almost 20 years, was brutally ripped off his vested property rights in approximately $1,300.00 per month rental subsidies without due process; When Defendant St. Margaret house, acting as the landlord, terminated the continuity of the Plaintiff's lease, it took the unilateral action by simply faxing the termination notice to Defendant HUD to have the later cut off such life and death support.

/2

22.  The Respondent has filed proper complaint with the Inspector General of the U.S.
Department of Housing and Urban Development (HUD).  The HUD has been well
informed of on-going severe civil rights abuses against the Plaintiff, still it does not take
any actions even to investigate the case.  Instead, HUD continues to give such a wicked
landlord free hands to allow the later to continue its full delegation of HUD's function to
give-or-take the Federal rental subsidies.  This sort of negligent inaction and reckless
omission are the ultimate cause encouraging such wicked institution as St. Margaret
House to exploit the loopholes in our Federal Housing subsidy programs and of their
related Federal Regulations.

On going retaliatory eviction actions should have triggered the necessity to review the
constitutionality of this instant case involving constitutional tort and torts under Title 42, Section
1983.  Respondent has been the recipient of our Federal Government's rental subsidies under
Section 8 for almost two decades, and such federally funded rental subsidies have become an
integral part of the respondent's vested property rights concerning the Respondent's life or death.
To allow such vital property rights of a citizen be deprived without due process is apparently
unconstitutional.  Unfortunately, the related Federal Regulations, such as Section 247 of CFR,
concerning so-called *"prohibition"* of eviction, virtually gives more or less free hands to the
heavily lobbying real property owners and real property profiteers, some of them are acting under
tax exempt shelter of "charity organization" as Trinity Church  in their dealing with those less
helped tenants, including such privileges to evict the victims of their rough or sophisticated
abuses, on the one hand, while allowing them to milking upon the benefits of tax payers'
resource on the other.  Section 247 provides such a vaguely defined criteria as "other good
causes",  allowing the landlord to terminate the federal housing subsidies to the desperately
needed tenants at the landlord's unilateral discretion, a deprivation of property rights without due
process, is unconstitutional, *per se, and should be so judicially declared by a U.S. Court.*  With
such an unconstitutional "enabling statute", rather than "prohibition" clause, the Petitioner had
terminated the 2-decade old Federal Housing subsidies, a property rights, which had been kept by
the Respondent, by demanding the Respondent to pay $4,967.00 balance of rent, even though this

case is still pending final disposition (See Exhibit #4). The balance representing the dollar amount of three-month Federal Rental Subsidies this Respondent had been entitled since approximately 2 decades ago. The Petitioner's action of presenting the $4967.00 bill for the Respondent to pay even before the eviction proceedings are still pending has demonstrated that the Petitioner takes away the Respondent's property rights without respect of the latter's due process rights, while the current Federal Housing Statutes virtually allows such unconstitutional, unlawful practice. That is the let-go flood gate causing widely spreading nursing home type epidemic of abuse scandals against the elderly and handicapped by those powerful rats in our society. While Housing Court in this instant case has demonstrated strong inclination to bias, showing absolutely no fairness, which could even have been racially motivated, that is prejudicial to the tenant. The Respondent's grievance as being a victim of gross and life threatening civil rights abuse, and his property rights issue should be adjudicated in U.S. Courts. Now, based on the above, the Defendants jointly and severely committed the following counts of harms against Plaintiff Joshua Hope:

Count One: Violation of Federal Rights in Wrongful and Retaliatory Eviction

All Defendants, through actions or omissions, jointly committed the wrongful and retaliatory eviction against the lawful beneficiary under Federal Rental Subsidies of Section 8. Defendant Joseph Breed and Defendant St. Margaret House have deliberately, maliciously plotted all sort of violent, and fraudulent acts to achieve their unlawful, immoral purpose to rip off Plaintiff's property rights in Section 8 by conspiring to pop up, by fraud and perjury, all disgusting, scandalous abuses leading to their frivolous state action to evict Plaintiff. Such illegal action as covert action of civil conspiracy against Plaintiff was in retaliatory nature in reprisal to Plaintiff's vocal criticism against Defendants mal-treatment of his fellow residents in St. Margaret House. Such Retaliatory Eviction is expressively prohibited pursuant to Section 223(b) and 223(c)(2) of the New York Real Property Law. Such wrongful eviction is also subject to penalty of RPAPL 853. The retaliatory eviction initiated from the defendants' illegal intention to suppress the plaintiff's proper exercise of his 1st , by ripping off his Federal grant, is apparent violation of the

Plaintiff's property rights under 5th and 14th, in connection to violation of his civil rights under Title 42. The co-defendant HUD has virtually abandoned its federally entrusted duties, by its negligent inaction, in aiding and abetting the primary defendants, usually the powerful real property tycoons and profiteers, to oppress the helpless tenants to whom our Congressional Enactment originally means to help, support and protect, through diligent administration of HUD by revoking Plaintiff's Section 8 benefits.

Count 2: Assault and Battery

Defendant Joseph Breed, acting both within and outside the scope of his active, continuing employment as the Manager for Defendant St. Margaret House under the Trinity Church, and Defendant St. Margaret House, and Defendant St. Margaret House, have jointly committed assault and battery for the civil rights violations against Plaintiff's person, achieved with the assistance of six New York City Police Officials, on November 1, 2006, in addition to all other similar violent, oppressive incidents, when the Defendants intentionally, maliciously and fraudulent caused violent and offensive touch and subduing of the Plaintiff's person. In such an apparent civil rights abuse engaged under Defendants' fraudulent misinformation, Defendants directed, manipulated, incited, aided and abetted such assaults and battery against Plaintiff. Such assault and battery have caused lethal and crippling harm against the Plaintiff, an innocent victim of 86 then, now 87. The ultimate reason for Defendants to cause such harm is to serve the Defendants' unlawful intention to suppress the Plaintiff's proper exercise of his 1st Amendment rights, these assault and battery are also seen as gross civil rights violations against the victim Plaintiff.

Count 3: False Arrest

Defendant Joseph Breed, acting both within and outside the scope of his active, continuing employment as the Manager for Defendant St. Margaret House, and Defendant St. Margaret House, under the Trinity Church, have jointly committed false arrest as gross civil rights violations against Plaintiff's person, achieved with the assistance of six New York City Police Officials, on November 1, 2006, in addition to all other similar violent, oppressive incidents,

*15*

when the Defendants intentionally, maliciously and fraudulent caused violent and offensive attachment of person of the Plaintiff, by restricting his liberty of movement. In such an apparent civil rights abuse engaged under Defendants' fraudulent misinformation, Defendants directed, manipulated, incited, aided and abetted such false arrest against Plaintiff.    Such false arrest have caused lethal and crippling harm against the Plaintiff, an innocent victim of 86 then, now 87. The ultimate reason for Defendants to cause such harm is to serve the Defendants' unlawful intention to suppress the Plaintiff's proper exercise of his 1st Amendment rights, false arrest is also seen as gross civil rights violations against person the victim Plaintiff.

Count 4: False Imprisonment

Defendant Joseph Breed, acting both within and outside the scope of his active, continuing employment as the Manager for Defendant St. Margaret House under the Trinity Church, and Defendant St. Margaret House, have jointly committed false arrest as gross civil rights violations against Plaintiff's person, achieved with the assistance of six New York City Police Officials, on November 1, 2006, in addition to all other similar violent, oppressive incidents, when the Defendants intentionally, maliciously and fraudulent caused police-aided confinement of person of the Plaintiff, by restricting his liberty of movement in such confined, liberty-deprived zones as Police vehicle and the confined zone of psychiatric department of Bellvue Hospital for approximately 10 hours. In such an apparent civil rights abuse engaged under Defendants' fraudulent misinformation, Defendants directed, manipulated, incited, aided and abetted such false imprisonment against Plaintiff.    Such false imprisonment have caused lethal and crippling harm against the Plaintiff, an innocent victim of 86 then, now 87. The ultimate reason for Defendants to cause such harm is to serve the Defendants' unlawful intention to suppress the Plaintiff's proper exercise of his 1st Amendment rights, such false imprisonment is also seen as gross civil rights violations against the victim Plaintiff.

Count 5. Intentional Inflict of Emotional Distress

Defendant Joseph Breed, acting both within and outside the scope of his active, continuing employment as the Manager for Defendant St. Margaret House under the Trinity Church, and

*16*

Defendant St. Margaret House, have committed malicious and intentional inflict of emotional distress, when defendants intentionally, by fraud and perjury, through conspiracy, plotted to expose, and actually exposed the Plaintiff, then age of 86 with all vulnerable weakness, in false light of having committed unlawful acts, or mentally disordered acts, in front all his onlooking neighbors, at 9:30 am, to have been overpowered by six police officers with two police cars. The se acts are extreme and outrageous, not tolerable to any minimum decency of civil society, especially when it has caused severe health consequences towards an 86 year old. When the false arrest as gross civil rights violations against Plaintiff's person, achieved with the assistance of six New York City Police Officials, took place on November 1, 2006, in addition to all other similar violent, oppressive incidents, plaintiff felt extremely anguished for the har against his dignity and public image. In such an apparent civil rights abuse engaged under Defendants' fraudulent misinformation, Defendants directed, manipulated, incited, aided and abetted such public show of false arrest against Plaintiff in front of public eyes.    Such police brutality has caused lethal and crippling harm against the Plaintiff, an innocent victim of 86 then, now 87. The ultimate reason for Defendants to cause such harm is to serve the Defendants' unlawful intention to suppress the Plaintiff's proper exercise of his 1st Amendment rights, such false imprisonment is also seen as gross civil rights violations against the victim Plaintiff. Defendant St. Margaret House has at least recklessly allows its employer Defendant Breed to engage such tortuous acts without proper supervision of his behavior.

Count 6. Malicious Abuse of Civil Procedures in Gross Violation of Civil Rights

In causing all these harmful, and lethal civil rights violations against the victim Plaintiff, Defendants, apparently knowing they have no cause of action in such a retaliatory eviction against the Plaintiff,  plotted to have started a completely frivolous civil actions, dragging the Plaintiff, now 87, into the Housing court proceedings, with the purpose to further harming the Plaintiff by constant mental anguish, in the meantime, draining all his limited resources. The Defendants repeatedly, and flatly rejected the Plaintiff's counsel proposals for compromise and amicable settlement, and continuing its retaliations and fraud in the belief that the Housing Court

judge is sided with the injuring parties.    Defendants malicious abuse of civil proceedings with Housing Court has caused further lethal harms proven by recent medical diagnoses.

Count 6: Civil Conspiracy

All Defendants, through actions or omissions; have jointly and severely caused, planned, designed, devised, involved, aided, encouraged, and help accomplished to allow all these gross civil rights violations/tortuous actions to occur against Plaintiff.

## REMEDIES SOUGHT

Plaintiff seeks for punitive damages against all defendants jointly and severally for count 1 for $1.00; or whatever appropriate by Jury;

Plaintiff seeks for actual, incidental and punitive damages for count 2 against Defendant Joseph Breed and St. Margaret House jointly and severely for $100,000.00, or whatever appropriate by Jury;

Plaintiff seeks for actual, incidental and punitive damages for count 3 against Defendant Joseph Breed and St. Margaret House jointly and severely for $300,000.00, or whatever appropriate by Jury;

Plaintiff seeks for actual, incidental and punitive damages for count 4 against Defendant Joseph Breed and St. Margaret House, jointly and severely for $300,000.00, or whatever appropriate by Jury;

Plaintiff seeks for actual, incidental and punitive damages for count 5 against Defendant Joseph Breed and St. Margaret House for $300,000.00, or whatever appropriate by Jury;

Plaintiff seeks for actual, incidental and punitive damages for count 5 against Defendant Joseph Breed and St. Margaret House for $1.00, or whatever appropriate by Jury;

Plaintiff seeks for punitive damages against all defendants jointly and severally for count 6 for $1.00; or whatever appropriate by Jury;

Plaintiff seek for permanent injunction barring all Defendants from committing any further retaliatory evictions;

Plaintiff seek for permanent injunction barring Defendant Joseph Breed from communicating, and further harassing plaintiff setting forth reasonable radius as the distance from touching communicating and meeting the Plaintiff. Concerning the fact that Defendant Breed has caused severe life threatening assault and risk to Plaintiff and such danger of further harming and threatening the plaintiff is continuing, Plaintiff respectfully pray for an TRO immediately banning the Defendant Breed appearing within 10 miles radius from Plaintiff's residence in order to preserve his fragile and endangered life.

Other remedies this Court finds it appropriate. Plaintiff also pray for fees and cost because he was double victimized not only for the harm he was sustained, but also by the endless harassment by the Defendants' persistent frivolous action on the housing court action.

Plaintiff respectfully prays that this case be tried by Jury.

Respectfully submitted

Ning Ye, Esq.
Counsel for the Plaintiff
42-42 Union Street, #3C
Flushing, NY 11355
Tel. 718-321-9899
Fax: 718-321-7722
Email: ynyale@aol.com

Name Hope, Joshua Age 86 Time, Date 1:30 11/1/06 MR# 3145675

# AES TRIAGE

Chief Complaints "threatening to hurt people"
Medical Problems denies
Substance Use

| ☐Slurred speech | ☐Staggering | ☐Ataxia | ☐Somnolence | ☐Confusion |
|---|---|---|---|---|
| Vital Signs T 98° | PR 60 | | RR 14 | BP 154/70 |

Name Jum Signature, Title [signature] Time, Date 12:30 p 11/1/06

## CPEP NURSING TRIAGE AND INITIAL ASSESSMENT

Classification ☑Detainable/☐Nondetainable ☐Emergent (immediate)/☐Urgent ☑(2 hours)/☐Standard
Brought in by ☐Self ☐Family ☑EMS ☐Project Help
☐Others
☐Police/EDP ☐Police/Arrest ☐Charge ☐Handcuffs Time Removed
Reason for visit (Use quotes) "I will sue this hospital" "I know
of secret of Communist China leaders I know secret
of the director
Psychiatric History denies They lied I want
Swinging a cane

Current aggressive ideation/behavior denies

Past aggressive behavior denies

Current suicidal ideation denies

Past (para)suicidal behavior deny

Hallucinations denies Delusions ⊖

Recent Medications ASA Digoxin Lipitor
low cholesterol
Allergies NKDA Reaction ⊖ Diet Reg ↓ Last Meal lunch

Tobacco denies Alcohol use (Type/pattern/last use) denies

Substance use(Drug/pattern/last use) denies

Ethnicity Asian Religion Christian Cultural Practices ⊖

Hygiene/grooming Well groomed

Oriented to: ☑Person ☑Place ☑Time ☐Situation ☐Confused, disorganized

☐Pressured speech, difficult to interrupt ☐Impulsive, aggressive, agitated ☐Sad, depressed mood

☐Does not recognize fact of illness ☐Uncooperative ☐Mute
Assessment Summary Pt is an 86 yo male BIB EMS from St Margaret's
House reportedly swinging a cane at residents. Pt reports director
is a liar/ denies aggression toward residents. Pt knows too many
secrets of the director but I will tell the court. Swell tone
Valuables Glasses/Contact lenses ⊖ Hearing Aid (L,R) ⊖ Dentures (Full, upper, lower) ⊖
Property disposed of clothes
CPEP ORIENTATION ☐ID Band ☐No Smoking Policy ☐Unit Rules/Treatment Programs ☑Contraband
☐Visiting/Telephone ☐Bill of Rights ☐Patient/family participation

Pt has unsteady gait and uses a cane.

**1RN**

## Nursing Diagnosis
☐Potential danger to self      ☐Potential danger to others      ☐Self care deficit
☐Other_____

## GOALS/OUTCOMES
☑Not harm self/others            ☑Verbalize intent to harm self/others before acting out
☑Perform activities of daily living     ☑Sleep for at least 4 hours
☐Attend therapeutic groups        ☐Other_____

## INTERVENTIONS
☑Monitor safety of patients and staff q 15 minutes    ☑Provide a safe, calm and supportive environment
☑Talk and listen to patient's verbalization          ☐Set limits in a calm, firm manner when patient
    of inner thoughts and feelings                 makes verbal/nonverbal threats of violence
☐Give medications as ordered or consult        ☐Decrease stimuli to calm down
    MD for escalating agitation                    ☐Monitor 1:1 for safety and comfort
☐Place in wrist and ankle restraints         ☐Assist with shower and provide clean clothing
    if patient becomes dangerous to self/others    ☐Encourage to attend and participate in therapeutic
☐Reinforce reality orientation call by name,      groups
    state date, time, place, etc.,                ☐Others_____

*Patient understands and agrees with plan*    ☐Yes       ☐No
If No, reason_____

Patient Signature X _Joshua Atty_ Time, Date _11-1-06_ 1 30 p

Name _Marilyn Platt R.N._ Signature, Title _____ Time, Date _11-1-06_ 1 30 p

---

## DISPOSITION

☐   Transferred to_____

☒   Released to    ( )Home    ( )Shelter    ( )Crisis Residence    ( )Mobile Crisis

☐   Residential Facility_____

☐   Admitted   ( )Voluntary (9.13)   ( )Emergency (9.39)   ( )Involuntary (9.27)   ( )Emergency EOU
     (9.40)

☐   Procedures   (Time, Date)   P.E.____,____   Blood____,____   EKG____,____   CXR____,____

     U/A____,____   ( )Tox Positive( )Tox Negative Cleared _____,_____    Consults_____

     Unit_____ Report given by_____ Received by_____

Send to unit: ( )OMH Admission ( )OMH Confirmation ( )OMH Status/Right ( )Appeal ( )Hospital
notices

      ( )Prior records       ( )None       ( )X-rays     ( )Clothing, non-valuable property

      ( )Discharged – Instructions given

Medications_____ Psychiatric Referral_____

Medical Referral_____ Housing_____

Patient Signature X _Joshua Atty_ _____ Time, Date _____

Name _Maria Dinah Marquez R.N._ Signature, Title _____ Time, Date _11 1 06 @ 930u_

**2RN**

**LOW PART**

**Narrative History:** Key Words- (Onset, Provokes, Quality, Radiates, Severity, Position, Changes En Route, Medications, Other Vital Signs)    Illness / Injury Onset Date

**Medical need**
(Must be supported in documentation)
- ☐ Medically Necessary
- ☐ Bed Confined
- ☐ Required Stretcher
- ☐ Unconscious
- ☐ Severe Pain
- ☐ Needed Restraining
- ☐ Visible Bleeding
- ☐ Non-Ambulatory

Onset Date: 1 1 / 0 1 / 0 6

**MH**
- ☐ Asthma
- ☐ Amputee
- ☐ Chronic Renal Failure
- ☐ Chronic Respiratory Failure
- ☐ Cancer
- ☐ Cardiac
- ☐ CVA / Stroke
- ☐ Diabetes
- ☐ Dialysis
- ☐ Emphysema
- ☐ HIV / AIDS
- ☐ Hypertension
- ☐ Psychiatric Problems
- ☐ Seizure Disorder
- ☐ Substance Abuse
- ☐ Tracheostomy
- ☐ Tuberculosis
- ☐ Other

**Allergies** ☐ No

**Medication**  ASA, Digoxin, Lipitor

**NARRATIVE HISTORY**

86 y/o male found sitting on scene c̄ NYPD. PD state "Pt was swinging his cane at residents". A&Ox3

PE: Airway patent, L/s clear = bilat, ⊖ dyspnea ⊖ C/P ⊖ dizziness ⊖ PMSX4EXT ⊖ n/v ⊖ abd pain x4 quads. Pt states "The resident manager doesn't like me, he wants me out". PE unremarkable ⊖ suicidal/homicidal idiations. Pt trp to hosp O2 in position of comfort c̄ incident c̄ NYPD in back of ambulance.

P↑Q↑ \2↑3↑35

**Moved to Ambulance By:**
- ☐ Chair
- ☐ Stretcher
- ☐ Scoop Stretcher
- ☐ Carried
- ☑ Walked with Assist
- ☐ Met at Ambulance

**Transport Position:**
- ☐ Supine
- ☑ Sitting
- ☐ Shock
- ☐ Prone
- ☐ Semi / Full Fowlers
- ☐ Left Lateral Recumbent

**Medication / Treatment Authorization**
- ☐ Protocol
- ☐ On-Line
- ☐ Written Orders
- ☐ NA
- ☐ On-Scene

On-Line Physician
On-Line Med. Facility

**SUPPLY**

| Qty | Supply Code | Qty | Supply Code | Qty | Supply Code | Qty | Supply Code | Qty | Supply Code | Qty | Supply Code | Qty | Supply Code | Qty | Supply Code |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  | Agency Definable 1 |  |  |  |  | 2 |  |  |  |  |  |  |

**Authorization for Billing / Release of Patient Information / Assumption of Financial Responsibility:** I request that payment of authorized Medicare/Medicaid and/or other insurance benefits be made to the pre-hospital care provider ("Provider") for any services furnished to me. I authorize any holder of hospital or medical information about me to be released to the Provider, Centers for Medicare and Medicaid Services, and/or my insurance carriers and their agents, including any other information needed to determine these benefits or other benefits payable for related services. I permit a copy of this authorization to be used in place of the original. I understand this authorization may be used by the Provider for all services furnished in the future until such time as I revoke this authorization in writing. I agree to assume full financial responsibility for payment of all charges not covered by my insurance carrier as well as any collection costs and/or attorney's fees as allowed by law. **Patient:** ☐ Unable to Sign ☐ Refused to Sign    ☐ **PCS Collected** ☐ **Other Insurance Collected**

Authorization Signature: ___    Date: ___    Guarantor Signature: ___

**Privacy Notice:** I hereby acknowledge that I have been provided with a copy of the Provider's Notice of Privacy Practices explaining how my personal health information is used and understand my individual rights related to this information:

Privacy Notice Signature: ___    Date: ___

Patient's Physician Name (please print): ___    Receiving RN / MD Signature: ___    Technician Signature: _J. Martens_

I Refuse Treatment / Transportation and understand the consequences of my refusal: ___    Witness Signature for Refusal: ___    On-Line Medical Control Signature: ___

# BELLEVUE HOSPITAL CENTER

## BELLEVUE HOSPITAL CENTER — EMERGENCY MEDICAL SERVICES

| ACCT. NO | EMERGENCY | CODE | REF SOURCE | REG DATE AND TIME | REG BY |
|---|---|---|---|---|---|
| 45675 030531456759 MFN | | 351 | | 11/01/2006 01:09PM | NS |

| A/C | ACCIDENT DATE AND TIME | PRCT | BADGE NO. | SOCIAL SECURITY NO. | M/S | SEX | RELIGION | RACE | DATE OF BIRTH | AGE | BIRTHPLACE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MFN | | | | 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 | X | M | CHR | A | 12/06/1970 | 85Y | CHINA |

NAME AND ADDRESS    JOSHUA
)PE
) FULTON ST    APT/FLOOR  17E
EW YORK    NY 10038    060
COUNTY
212-766-0792  ·  CODE

PATIENT EMPLOYMENT
RETIRED

PERSON TO BE NOTIFIED
MR, HANTIZ

RELATIONSHIP  O    APT/FLOOR
HOME PHONE  212-334-0611
BUSINESS PHONE

AME    CHIANG
STE    JOSHUA
OR NAME AND ADDRESS
) FULTON ST    APT/FLOOR
EW YORK    NY 10038    17FELF
REL CODE
212-766-0792    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
S/S #    PHONE

| GUARANTOR EMPLOYMENT | SOURCE REF | HSHLD COMP | EDUC | WKLY INC | NO DEP |
|---|---|---|---|---|---|
| | # SIBLINGS | PREV BELL ADM | | | |

| FIX | MEDICARE NO | SUFFIX | B? | PLAN CODE | MEDICAID NO | LINE NO. | EXP. DATE | PLAN CODE | FEE CODE | AMOUNT | C/R | P/T | SERVICE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 107688671 | | | P17 | YU50800T | | | 4 | | | | E | FMR |

| PSS ID NO. | SUFFIX | PLAN CODE | CONTRACT HOLDER | PATIENT RELATION TO CONTRACT HOLDER |
|---|---|---|---|---|
| | | | | |

| URANCE NAME AND ADDRESS | PLAN CODE | POLICY NO. | NO. | MMIS INS CODE |
|---|---|---|---|---|
| | | | | |

UNION NAME    LOCAL NO.



## Referral Source

- ☐ Self
- ☐ EMS
- ☐ Outpatient Clinic
- ☐ Gouverneur Hospital
- ☐ HRA
- ☐ Police/Arrested
- ☐ Other agency _____
- ☐ Family/friend
- ☐ Case Manager
- ☐ CPEP Mobile Crisis
- ☐ Project Help
- ☐ Court
- ☒ Police/EDP

## Financial

Insurance Carrier _____  ☐ Managed Care
Insurance Policy # _____  ☐ Active
Medicaid # YU50800 1    ☐ Active
Medicare # _____    ☐ Active
Social Security # _____

☐ Veteran  ☐ Service connected  ☒ Not service connected
☐ Income _____  ☐ Wages ☐ SSI ☐ SSD ☐ PA ☐ VA
☐ Food Stamps _____

## Source of Information

Verbal report by patient    ☐ ?Reliability ✓
Document
Other  home aid

OLD CHART ORDERED _____

3ALL

# PRESENT ILLNESS

Time    4:00 pm
Date    11/1/06

Sources/Reliability  patient + home aid - reliable
Chief Complaint  BIB NYPD as EDP
Narrative Summary

8/o y/o Chinese American M BIB NYPD EDP after argument with building manager. Pt has b/o bad relationship c̄ manager and of temper tantrums when someone questions his honesty. He claims this is the 6th time that the manager called the police on him, and home aid claims that security in the building was afraid pt might injure someone. She reports that pt speaks a lot and loudly when he is upset. He has been upset after receiving eviction notice 2 days ago, even though he paid rent. Pt has no b/o psychiatric illness or psychiatric medication. He denies smoking cigarette, drugs, or alcohol. He reports no change in sleep, appetite, and mood.

## PAST PSYCHIATRIC HISTORY AND TREATMENT

**Describe prior episodes. Include some index of severity. Describe suicide attempts, "parasuicidal" behavior and aggressive behavior in detail. Note their reaction to mental state and substance use. List treatments and response.**

No prior psychiatric history

5MD

# DEVELOPMENTAL HISTORY/PERSONALITY TRAITS

**Describe if present**

Behavioral problems < 15 y.o. such as
Lying, truancy, aggression, theft
_____

Behavioral problems > 15 y.o.
_____

Criminal history including incarceration
_____

History of victimization including
Physical or sexual abuse < 18 y.o.
_____

Recurrent suicidal threats or behavior
_____

Inappropriate displays of anger, frequent
Fights, "acting out"
_____

Pattern of affective instability
_____

Pattern of exploitative interpersonal
Relationships
_____

Strong sense of entitlement or unreasonable
Expectations
_____

Pattern of indifference to social relationships,
"loner"
_____

Pattern of peculiarities in ideation appearance
and behavior
_____

Problems with gender identity, sexual
Orientation or intimacy
_____

Pattern of "high-risk" behavior, self-destructive
_____

Other life-long patterns of behavior
_____

# FAMILY HISTORY

## FAMILY STRUCTURE

**Describe family constellation, religious and cultural identification and integration, socioeconomic status and impact of psychiatric disorder of affected family members.**

Pt is Chinese birth. One parent American, one Philipino. Emigrated to USA
22 yrs ago. Many family members are Baptist priests, and he identifies
as Baptist.

## FAMILY PSYCHIATRIC HISTORY
List relatives in each category.

Bipolar_____ Unipolar_____
Schizophrenia_____ Addiction_____
Other_____

**7MD**

# MENTAL STATUS EXAMINATION

Unit _CPEP_    Time,Date _3:30 pm  11/1/06_

**Must respond within each category and to items in _BOLD_ print. No disturbance=0, unknown = ?**

GENERAL APPEARANCE _groomed, A.O,_

Cooperation _Cooperative, eye contact_

Psychomotor activity _agitated_

EPS, dyskinesia, tics, etc ____

**SPEECH**

| | | | |
|---|---|---|---|
| Spontaneity | ☒Spontaneous | ☐Long latency | ☐Needs prompting | ☐Mute |
| Rate/Prosody | ☐Normal | ☐Halting | ☐Rapid | ☒Pressured |
| Volume | ☐Normal | ☐Soft | ☒Loud | |

**THOUGHT PROCESS**____ ☐Impoverished ☐Concrete ☒Tangential ☐Irrelevant ☐Flight of ideas
☐Loose ☐Uncoherent

**THOUGHT CONTENT**____ ☒Preoccupations ☐Overvalued ideas ☐Referential ☐Obsessions ☐Delusions
☐Phobia ☐Grandiose ☐Paranoid ☐Bizzare ☐Nihilistic ☐Religious ☐Somatic

_**Must describe general themes**_

SUICIDAL IDEATION◯ ☐Morbid thoughts ☐Passive SI ☐Planning ☐Any preparation ☐Final Acts
☐Intent ☐Lethal means available: DESCRIBE METHOD____

AGGRESSIVE IDEATION ☐Vague Ideas ☐Specific aggressive ideas ☐Specific homicidal ideas ☐Plausible plan
◯ ☐Weapon available Describe method____
☐Victim identified Name____ ☐Notified

PERCEPTION◯ ☐Derealization ☐Depersonalization ☐Illusions

Auditory Hallucinations:◯ ☐Whispering ☐ Simple Sounds/phrases ☐Single voice ☐Multiple voices
☐Recognizable ☐Address Each Other ☐Address patient ☐Distressing
☐Commands ☐Follows commands Describe content____
☐Appears to be responding to internal stimuli

Visual Hallucinations:◯ ☐Simple ☐Complex ☐Bizarre Describe content____
Other___ ☐Olfactory ☐Gustatory ☐Tactile Describe____

MOOD ☐Elevated ☐ Depressed ☒Neutral
Patient describes mood as (quote)____

**AFFECT** Describe affects observed (tearful, smiling, etc.,) _upset and frustrated_
Range ☐Broad, expansive ☒Full ☐Constricted ☐Blunted/flattened
Stability/Reactivity ☒Stable ☐Irritable, reactive ☐Labile
Appropriateness ☒Appropriate ☐Inappropriate to content ☐Inappropriate to situation

**COGNITION**
Oriented to ☐Person ☒Place ☐Time ☐Situation
Attention/Concentration ☐ "d-l-r-o-w" ☐Serial ___'s
Memory ☐Registers __/__ items, recalls ___in___minutes ☐Spontaneous ☐categories ☐multiple choice
MMSE Must be given for any "organic" diagnosis Score __/__
Intelligence ☐Normal ☐High ☐Low normal ☐Mild MR ☐Moderate MR ☐Severe MR

**INSIGHT** ☒No insight ☐Recognizes presence of illness ☐Understands psychiatric nature
Check all that apply ☐Accepts need for treatment ☐Follows recommendations
**JUDGEMENT** ☐Poor as a function of current mental status ☐Poor as a function of stable traits
Check all that apply ☒Adequate for basic needs ☐Understands consequences of behavior

**9MD**

# MULTIDISCPLINARY PROGRESS NOTE

11/1/06 @ 930 pm  Nursing note

Pain: was treated and released after seen
and evaluated by MD. Left the unit calm
awake to 3x spheres and not in acute distress     Maria Dinah Marquez R.N.

10ALL

# CPEP DISCHARGE SUMMARY AND PLAN

**Major Findings and Case Formuations** _No prior hx — See H&P_

_pt. involved in landlord/tenant dispute_

_according to her Home Attendt — pt has never swung_
_her cane (at the super (manager)_

**CPEP Course (Indicate CPEP components utilized. Describe care delivered and response to treatment)**

_observed, evaluated, no s/sx of psychiatric illness_

**Condition on Discharge (Describe the status as discharge of the problems driving this episode of care)**

_psychiatrically fit for release_

**Final DSM IV Diagnosis**
**Mark Primary Diagnosis**

| | | |
|---|---|---|
| ☐ Axis I | _None_ | Code_____ |
| ☐ | _____ | Code_____ |
| ☐ | _____ | Code_____ |
| ☐ | _____ | Code_____ |
| ☐ Axis II | _deferred_ | Code_____ |

Axis III _Hypercholesterolemia_
Axis IV _ongoing landlord/tenant dispute_
Axis V (GAF)___ _70_

**Patient participated in treatment planning by:** _agnes & T+R_

(✓) Private Residence    ( ) Crisis Residence    ( ) Supported Housing    ( ) Shelter
( ) Family  ( ) Others  ( ) Alone    ( ) Adult Home    ( ) Case Management    ( ) Residential drug tx
( ) Day Program    ( ) Clinic    ( ) Self-Help Group    ( ) Mobile Crisis
( ) Medical Service    ( ) Entitlements    ( ) Medications

**Given:** ( ) Appointments    ( ) Referral    ( ) Prescription    ( ) Instructions    ( ) Documents
**(Prearrangement, etc.,)**

| | TITLE | NAME | SIGNATURE | DATE/TIME |
|---|---|---|---|---|
| | **Resident/Clinician** | | | |
| | **Attending** | _Louie_ P32480 | _SL_ | 11/1/06 4:30pm |
| | **Nurse** | Maria Dinah Marquez R.N. | _aw_ | 11/1/06 @ 930a |
| | **Social Worker** | | | |

**11B**

**PAIN SCALE**

| 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| No Pain | | Little Pain | | | Medium Pain | | Large Pain | | | Worst Possible Pain |

0   2   4   6   8   10

## PAIN SCREENING

A.   PAIN SCREENING

1.  Do you have pain now?                                  (  )YES    ( ✓ )NO
2.  Have you had pain in the past 3 months?                (  )YES    ( ✓ )NO
3.  On a scale of 0 to 10, rate the pain you are feeling now:
        0=None        5=Moderate        10=Severe
4.  Describe the pain        (  )Aching/throbbing        (  )Dull
    (  )Shooting        (  )Burning        (  )Sharp        (  )Pressure
    (  )Other _____
5.  Where on your body is the Pain? _____
6.  When did the pain start?        (  )Today        (  )Days Ago
    (  )Weeks Ago        (  )Months Ago        (  )Years Ago
    (  )Other _____
7.  What type of pain is it?        (  )Acute        (  )Chronic
8.  It is related to your current illness?    (  )Yes        (  )No
9.  What makes the pain worse? _____
10. Does the pain affect your daily activities?        (  )Sleeping        (  )Eating
    (  )Walking        (  )Other _____
11. Do you use any of the following?    (  )Yoga        (  )Massage
    (  )Chiropractor        (  )Acupuncture        (  )Magnets
    (  )Alternative Therapy        (  )Other _____
12. Do you have any medications to control the pain?        (  )Prescription
    (  )Over the counter        (  )Injections
13. Are you followed in a pain management program?        (  )Yes        (  )No
    If yes, please explain _____
    _____

14. What is your pain level goal? _____
    _____

NOTE:   Pain level of 4 and above, inform RN/STAFF of the receiving unit or facility.

RN Signature ___Marilyn Platt R.N.___        Date/Time _11-1-06   1°_

Patient Name _Hope Joshua_        Chart Number _3145675_

**2ARN**



# GEORGE LIU, M.D., Ph.D., F.A.C.P

### INTERNAL MEDICINNE & ENDOCRINOLOGY
### 185 Canal Street, 6th Floor, New York, NY 10013
### Tel: (212)343-7323  Fax: (212)343-7913

Dear Mr. Ning Ye:

At your request, I am writing to describe my history with Mr. Joshua Hope and what I know about his situation at St. Margaret House, a senior citizen assisted living facility located on Fulton Street, New York, New York. Mr. Joshua Hope has been my patient since 1986. His health has been rapidly and progressively deteriorating in the last year, during which time he has suffered from fluctuating blood pressure, shortness of breath, palpitations, insomnia, and extreme anxiety. During a clinic visit in Nov. 2005, Mr. Hope told me that he attributed his declining health to the constant pressure on him from repeated abuse and harassment inflicted upon him by the Mr. Breed, the administrator of St. Margaret House.

On November 2, 2006, I received a phone call from Dr. Goldstein , an Emergency Medicine Attending Physician at New York Downtown Hospital, advising me that Mr. Hope was in the emergency room and asking me to come down to the hospital to participate in his emergency room evaluation. When I arrived, I found Mr. Hope lying on a stretcher in the emergency room hallway because the emergency room was so crowded that night that no exam room was available. Mr. Hope kept crying out "I want justice! I want justice!" He told me that that the reason he was in the emergency room was because he was suffering from headaches, heart palpitations and shortness of breath. Mr. Hope told me again that he had been suffering constant abuse and harassment by Mr. Breed. Mr. Hope explained that he believed that Mr. Breed was mistreating him because of Mr. Hope's prominent role in protesting Mr. Breed's decision to increase the price of mandatory meals for all the aging occupants at St. Margaret House. Furthermore, Mr. Hope described an incident that occurred the day before, on November 1, 2006, where an argument between Mr. Hope and Mr. Breed resulted in Mr. Breed calling the police to St. Margaret's House alleging violence, or attempts to commit violence by Mr. Hope. According to Mr. Hope, six police officers picked him at St. Margaret House and escorted him to Bellevue Hospital for psychiatric evaluation. Upon hearing the story, I thought that calling the police and detaining Mr. Hope at Bellevue Hospital was totally unnecessary and excessive. I have known Mr. Hope for twenty years now, and my observation is that he does not have a psychiatric condition. I have been told that the report from Bellevue Hospital came to the same conclusion.

I do not take any position as to who is right or wrong in the ongoing dispute between Mr. Hope and the administration at St. Margaret's House. I do not have actual personal knowledge of many of the recent events between Mr. Breed and Mr. Hope. As described above, most of what I know has been told to me by Mr. Hope. What I do know is that my 86 year old patient's health is deteriorating significantly to the point where it may be life-threatening; therefore, I want to provide whatever assistance I can to help alleviate the pressures that Mr. Hope faces at St. Margaret House.

Should you have further questions, please feel f

George Liu, MD, Ph.D., FACP

# New York City Police Department
## Omniform System - Complaints

| Report Cmd: 001 | Jurisdiction: N.Y. POLICE DEPT | Record Status: Final, No Arrests | Complaint # 2006-001-07752 |
|---|---|---|---|

**Occurrence Location: INSIDE OF 49 FULTON STREET**

| | |
|---|---|
| Name Of Premise: | |
| Premises Type: RESIDENCE - APT. HO | |
| Location Within Premise: | |
| Visible By Patrol?: NO | |

Precinct: 001
Sector: A
Beat:
Post:

**Occurrence From: 2006-10-28 13:20 SATURDAY**

Occurrence thru: 2006-10-28   13:22
Reported: 2006-10-28   14:38

Complaint Received: RADIO

Aided #
Accident #
O.C.C.B. #

**Classification: HARASSMENT**

Attempted/Completed: COMPLETED
Most Serious Offense Is: VIOLATION
PD Code: 637  HARASSMENT,SUBD 1,CIVILIAN
PL Section: 24026
Keycode: 578  HARASSMENT 2

**Case Status: CLOSED**

Unit Referred To:
Clearance Code: PATROL
Log/Case #: 0
File #: 51
Prints Requested? NO

| Was The Victim's Personal Information Taken Or Possessed? NO | Was The Victim's Personal Information Used To Commit A Crime? NO | | |
|---|---|---|---|
| Gang Related? NO | Gang Intel Log #: | Name Of Gang: | DIR Required? NO | Child Abuse Suspected? NO |

| If Burglary: | Alarm: | If Arson: |
|---|---|---|
| Forced Entry? | Bypassed? | Structure: |
| Structure: | Comp Responded?: | Occupied? |
| Entry Method: | Company Name/Phone: | Damage by: |
| Entry Location: | Crime Prevention Survey Requested?: | |

| Supervisor On Scene - Rank / Name / Command : | Canvas Conducted: NO | Interpreter(if used): |
|---|---|---|

**NARRATIVE:**
AT T/P/O COMPL. STATES A DISPUTE ERUPTED OVER FOOD PRICES AT PERP'S
RESIDENCE. WORDS WERE EXCHANGED ENDING WHEN PERP STATED, "I WILL SHOOT YOU."
CAUSING COMPL. FEAR AND ALARM. BOTH PARTIES HAVE HAD PREVIOUS VERBAL
DISPUTES IN THE PAST.

**No NYC TRANSIT Data for Complaint # 2006-001-07752**

| Total Victims: 1 | Total Witnesses: 0 | Total Reporters: 1 | Total Wanted: 1 |
|---|---|---|---|

| VICTIM: # 1 of 1 | Name: BREED,JOSEPH B | Complaint #: 2006-001-07752 |
|---|---|---|

Nick/AKA/Maiden:
Sex/Type: MALE
Race: UNKNOWN
Age: 0
Date Of Birth: UNKNOWN
Disabled? NO
Need Interpreter: NO
Language:

Gang Affiliation: NO
Name:
Identifiers:

Will View Photo:
Notified Of Crime
Victim Comp. Law:

| LOCATION | ADDRESS | CITY | STATE/COUNTRY ZIP | APT/ROOM |
|---|---|---|---|---|
| HOME-PERMANENT | 49 FULTON STREET | MANHATTAN NEW YORK | 10038 | |

Phone #: BUSINESS 212-766-8122

| Action Against Victim: | Actions Of Victim Prior To Incident: ARGUING |
|---|---|
| Victim Of Similar Incident: NO | If Yes, When And Where |

| REPORTER: # 1 of 1 | Name: BREED,JOSEPH B | Complaint #: 2006-001-07752 |
|---|---|---|

Nick/AKA/Maiden:
Sex/Type: MALE
Race:

Gang Affiliation: NO
Name:
Identifiers:



Age: 000
Date Of Birth:
Need Interpreter: NO
Language:

Relationship To Victim: NONE

Location          Address          City          State/Country Zip   Apt/Room
HOME-PERMANENT 49 FULTON STREET MANHATTAN NEW YORK    10038

Phone #: BUSINESS: 212-266-8122

**WANTED: # 1 of 1**

Name: HOPE (YI HE), JOSHUA (YI HE)

Complaint: 2006-001-07752

| | |
|---|---|
| Nick/AKA/Maiden: | Height: 6FT0IN |
| Sex: MALE | Weight: 170 |
| Race: ASIAN/PAC.ISL | Eye Color: BLUE |
| Age: 85 | Hair Color: GRAY |
| Date Of Birth: 12/06/1920 | Hair Length: NORMAL |
| U.S. Citizen: | Hair Style: BALD (PARTIAL) |
| Place Of Birth: | Skin Tone: LIGHT |
| Need Interpreter: NO | Complexion: CLEAR |
| Language: | |
| Accent: NO | S.S. #: 0 |

Order Of Protection: NO
Issuing Court:
Docket #:
Expiration Date:
Relation to Victim: FRIEND/ACQUAINTANCE
Living together: NO
Can be Identified: YES

Gang Affiliation: NO
Name:
Identifiers:

LOCATION        ADDRESS        CITY        STATE/COUNTRY ZIP   APT/ROOM   HOW LONG?   RES. PCT
HOME-PERMANENT 49 FULTON STREET MANHATTAN NEW YORK         17 E                        001

Phone #: HOME: 212-766-0792

N.Y.C.H.A. Resident: NO  N.Y.C. Housing Employee: NO On Duty:
Development:        N.Y.C. Transit Employee: NO

| | | |
|---|---|---|
| Physical Force: THREATENED | Gun: | Used Transit System: |
| Weapon Used/Possessed: | Make: | Station Entered: |
| Non-Firearm Weapon: | Caliber: | Time Entered: |
| Other Weapon Description: | Color: | Metro Card Type: |
| | Type: | Metro Card Used/Poses: |
| | Other/Gun Specify: | Card #: |
| | Discharged: NO | |

| CRIME DATA | DETAILS |
|---|---|
| STATEMENTS MADE | I WILL SHOOT YOU |
| MODUS OPERANDI | UNKNOWN |
| ACTIONS TOWARD VICTIM | SMASHED WINDOW |
| CLOTHING | HEADGEAR -UNK -UNKNOWN COLOR |
| CLOTHING | FOOTWEAR -UNK -UNKNOWN COLOR |
| CLOTHING | OUTERWEAR -UNK -UNKNOWN COLOR |
| CLOTHING | ACCESSORIES -UNK -UNKNOWN COLOR |
| CHARACTERISTICS | UNKNOWN |
| BODY MARKS | UNKNOWN |
| BODY MARKS | -UNKNOWN |
| IMPERSONATION | UNKNOWN |

| Reporting/Investigating M.O.S. Name: POM GEORGE HANYCZ | Tax #: 914800 | Command: 001 PCT | Rep.Agency: NYPD |
|---|---|---|---|
| Supervisor Approving Name: LT KEVIN KEEGAN | Tax #: 890266 | Command: 001 PCT | Rep.Agency: NYPD |
| Complaint Report Entered By: PAA BAKER | Tax #: 349271 | Command: 001 PCT | Rep.Agency: NYPD |
| Signoff Supervisor Name: SGT MORALI | Tax #: 918557 | Command: 001 PCT | Rep.Agency: NYPD |

## END OF COMPLAINT REPORT
## # 2006-001-07752

Print this Report

Payment receipt report

Page 1 of

Case 1:07-cv-04726-RJS    Document 12-6    Filed 11/13/2007    Page 33 of 33

OneSite® Leasing & Rents                St Margarets Hse Housing Deve Fund Corp                120.060.050.0

**Payment receipt**
**St. Margaret's House**
Report created on calendar date: 3/2 (property date: 3/1)

Receipt #: 8662
HOPE, JOSHUA - Unit 17E
49 FULTON STREET  NEW YORK

| Date | Code | Payment Description | Document | Journal | Amount |
|------|------|---------------------|----------|---------|--------|
| 02/06/2007 | PMTCHECK | Payment By Check - HOPE | 303 | 052007006 | 163.00 |

| Date | Code | Payment Distributed As Follows | Document | Journal | Amount |
|------|------|-------------------------------|----------|---------|--------|
| 02/06/2007 | RENT | Rent | | | 163.00 |

| | |
|---|---|
| Subjournal Balance (RESIDENT) | **$4967.00** |
| Total balance | **$4,967.00** |



Received
By:    gaik khoo
ACCEPTED WITH FULL RECOURSE



http://ver221658onsite.realpage.com/rents/new_resident/paymentreceipt/paymentreport... 036224.1    3/2/...