IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Joshua Hope | ) | |
| | ) | |
| Plaintiff | ) File: 07-CV-4726 | |
| | ) The Hon. Sullivan | |
| against – | ) | |
| | ) | |
| St. Margaret House, et al | ) | |
| Defendants | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS

Plaintiff respectfully opposes Defendant's Supplemental Motion to Dismiss.

It may be clear and undisputable that this instant case may not be a good candidate appropriate for summary dismissal.  Summary dismissal a complaint involving so many serious triable factual and issues.

First of all, Defendants St. Margaret House and Joseph Breed maintains their claim of improper service, a seemingly "hit and run" tactic. While Plaintiff presented the Court with normally accepted proof of service by the professional process server, the burden of proof to rebut such Plaintiff's proof shifted to the claimant, who has failed to overcome such professional process server's affidavits.  The issue may have now become *moot*.

It has been well established within this jurisdiction that a complaint should be dismissed by summary judgment without trial if there was "no genuine issue as to any material fact" entitling defendants to "judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party. Murray v. Nat'l Broadcasting Co. 844 F.2d 988 (2nd Cir., 1988) citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 91 L. Ed.

1

2d 202, 106 S. Ct. 2505 (1986); Heyman v. Commerce and Industry Insurance Co., 524 F.2d 1317, 1320 (2d Cir. 1975).

It is highly unlikely the instant case, where, an innocent senior citizen of age 88, had been victimized for being repeatedly abused, slandered, persecuted, physically assaulted, handcuffed, and held in extremely lengthy period of false imprisonment, until the victim had been turned from a medically certified mentally healthy person into a medically certified mental patient, under such defendants' persistent, systematic, orchestrated scheme of persecution.

In the State of New York, summary dismissal is not easily taken. In deciding the instant motions to dismiss, it is well established that this Court must first deem the allegations contained in the complaint as true, and construe every inference in favor of the plaintiff (Morone v. Morone, 50 NY2d 481, 484 [1980]; Cohn v. Lionel Corp. 21 NY2d 559, 562 [1968]).

Point I: Defendant's Fraud and Perjury

To escape from the severe and aggravated legal consequences of Defendant's malicious mischief targeting the Plaintiff, having caused the latter life-threatening, and life-long harm, defendant raised "legally cognizable claim" theory, arguing that count of fraud is not applicable in this instant case, because the Plaintiff is not the intended recipient of such "fraud" and does not rely upon such misrepresentation of fact. What cited by the Defendant, seeking for summary dismissal, is ordinary commercial fraud. In this instant case, the type of fraud is a typical federally prohibited wire fraud, causing the recipient of such maliciously made misinformation to rely upon such fraud and imposing severe consequence of such reliance upon a third party victim, an imputed fraud victim.

In this Judicial Circuit, in case of fraud of non-ordinary commercial type, but kind of wire-fraud deceiving the Federal Government Agency to induce the latter to cause injury upon the ultimate and imputed victim, the common law "direct alliance is not applicable, the fraudulent party is held liable. See Anza et al v. Ideal Steels, 373 F. 3d 251 (2nd Cir, 2004). In that relatively updated case, the defendant, a big corporation,

defrauded the Federal Tax authority by willful misrepresentation and misinformation to cause the latter to decrease the defendant tax liability.  As consequence, it enabled the Defendant to lower the cost of production, and having engaged in unfair competition at market place by low price damping practice.  Defendant's damping, had caused the Plaintiff hardship in selling its similar products in general market place.   The Second Circuit held that the Plaintiff victim prevail while excluding applicability of common law "direct reliance" in fraud.

The case was appealed to the U.S. Supreme Court and received Certiorari.  The Supreme Court did not agree, at one point, by finding that Defendant's fraud is too remote to Plaintiff's injury, for lack of direct causation link, say probable cause, between the Plaintiff and the Defendant, citing *Holmes v. Securities Investor Protection Corp, 503 U.S. 258 (1992).*      In the lengthy reasoning rendered by the Supreme Court, it affirmed in part, and reversed in part, with an explicit exception: "We have no occasion to address the substantial question whether a showing of reliance is required.  Anza et al v. Ideal Steels 547 U.S.____(2006)   That is to say, the U.S. Supreme Court did not question or reverse the 2nd Circuit's holding that the common law "reliance" theory is not applicable.  Employing all these factual patterns and both higher courts' legal reasoning into this instant case, we may find that the Defendant's argument does not stand in this Judicial circuit.  Being partially an analogue to this instant case, the immediate cause of action de facto is the alleged injuring party prompted the government's action by feeding the later with fraudulent information and willful misrepresentation to deceive the government for its benefit.  However, the injury caused by such a fraud is spreading through out the general market place, the Plaintiff is only one of countless, unspecified, derivative and imputed victims in general industrial competition.  As to this aspect, the Supreme court finds it may be too remote to render such a remote victim, one among the unspecified group of victimized competitors relief under the theory of "causation".  In this instant case, the scheme of fraud is not designed to target the entire market place and unspecified number of victims through out the world.  The fraud is specifically designed to target one specific victim, the Plaintiff.  By applying legal and intellectual reasoning in both cases of Ideals and Holmes, by both the Second circuit and the U.S. Supreme Court, then we

find, 1) Common law reliance is not applicable; 2) Factual and legal causation, *i.e.,* probable cause, does exist in this instant case.

Secondly, Defendant's argument to dispute the sufficiency of particularity may not be viable.  In submission of supporting documents, Plaintiff presented such specific slanderous misleading statement word by word to the Police when the Defendant placed his premeditated "911" call: Defendant was committing such violent crimes as "smashing the building's windows" and attempted to kill the caller, Defendant Joseph Breed by "shooting" him.   At this stage of litigation, Plaintiff does not have to present all particularities.  Most of which can be found through discovery process yet to start. Therefore, such alleged "insufficiency" may not be prejudicial to any party.

As to Defendant's argument about the private rights to perjury.  Again, the Plaintiff is an imputed victim to Defendant's slanderous perjury against the New York Police Department.  Defendant's alleged perjury to deceiving the government agency has caused direct, and imminent harm against the Plaintiff.

Point II: Tenant Protection Act Issues

Plaintiff does not dispute with Defendant that this Honorable court should take a judicial notice of the "New York Tenant Protection Act" (i.e., New York City Local Law 7 of 2008) (the "Act").  The purpose that Plaintiff raised this local legislation is because the enactment is the government's proper response to those financially and socially powerful real property owner's vicious attacks against powerless tenants by abusing the latter. We know most of legislature is legging behind what have actually happened in the reality and provide channels of aftermath legal remedy.

Nursing home type harassment scandals are apparently one of the major issues the Act has been designed to address and properly respond.  The instant case is such a typical case to highlight the issues addressed by the Act.  Therefore, the purpose of the Plaintiff's raising of the Act issue, is by no means that the Plaintiff is seeking for the remedy under the Act on this level of legal action.  If judicial notice is taken, the Act may serve as circumstantial evidence to rip off the Defendant's defense of "justification".

4

With the new law in place, the Defendant is not supposed to be allowed to use the pre-Act settlement to defend its case, because the case on the level of Landlord-Tenant court may be reopened for change of circumstances.

Additionally, Defendant's argument implicating Plaintiff's conceding of "harassment" appears groundless. Article 3 of the Settlement Agreement made it specific that "the Parties consent to this stipulation of settlement (Stipulation) *without any admission* of the *allegations contained* in the Notice of Termination, Petition, and/or Answer."   While the purpose of Settlement "is to resolve their disputes without further expense and delay of litigation." (Preamble)  To reduce the expense of litigation is an one-sided bitter fruit for the real victim, Plaintiff here and respondent there, in both cases to swallow.  The Defendant, one of the real property tycoons, being backed with Trinity Church worldwide, has never had short of paying ability to cover up whatever costs, while this Plaintiff is an indigent litigant.  To him, the "expense" is ultra-sensitive issue. To invoke such an amicable settlement as bases to accuse Plaintiff's acceptance of the settlement in the House court as his self-pleading of guilty of harassment, may not be truthful as contrary to the record we cited, neither may it be ethical.

Point III: Negligent Hiring and Supervision

Defendant St. Margaret house, as a juridical person, may argue its lacks of active intension to persecute Plaintiff with systematically pursued vicious attacks.  However, its persistent inaction to prevent Joseph Breed's wrongful mischief targeting a senior citizen in later 80s in a course of almost two-year period may be seen as reckless disregard of the tenant's personal safety under its managing employee's brutal abuses, sometimes, in color of law.  Malice can be inferred from the Employer's recklessness.   To say the least, the Employer St. Margaret House is liable for all these irreparable harms inflicted upon the Plaintiff by its managing employee, under the theory of *respondeat superiori.*

Plaintiff understands he has burden of proof, including expert opinion testimonies, to establish the negligence of these two types. However, merely using conclusive remarks to argue that the Plaintiff failed to present evidence of "propensity" may be too premature

to argue at this stage of action.  Defendant Joseph Breed's propensity of violent abuses, his propensity of habitually committing fraud to serve his own ulterior motive to persecute a vocal critical against his alleged corruptive acts, can be inferred by Plaintiff's depiction of double digits number of retaliatory harassment and intimidation against Plaintiff within the cause of more than two years.  It is not an isolated incident that triggered this Federal Litigation.  Defendant's propensity of harming the Plaintiff have just been inferred from too many similar incidents of provocations and violent endings.

Wherefore, in the foregoing light, Plaintiff respectfully prays that Defendant's Supplemental Motion to dismiss, together with his Motion to Dismiss be denied.  The Case should be scheduled for trial.

Respectfully submitted by

_____
/s/Ning Ye, Esq.
Counsel for the Respondent
42-42 Union Street, #3C
Flushing, NY 11355
Tel.: 718-321-9899
Fax: 718-321-7722
Email: ynyale@aol.com

Certificate of Service

Counsel for the Respondent hereby certifies that two copies of the above Opposition, together with the supporting documents, has been served upon the following recipients by both fax first class mail, postage prepaid, on this 13th day of June, 2008:


**Mathew S. Fenster, Esq.**
**Cadwalader, Wickersham & Taft LLP**
**One World Financial Center**
**New York, NY 10281**


The City of New York Law Dept.,
100 Church Street
New York, NY 10007 (with first class mail only)


_____  _____

/s/Ning Ye, Esq.
Attorney at Law